UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

ANTHONY RUSSO,

    Plaintiff,

v.

CASE NO.: 0:20-cv-60436-RS

NORTH BROWARD HOSPITAL DISTRICT
d/b/a BROWARD HEALTH,

    Defendant.

_____/

## AMENDED COMPLAINT

1. Unwanted "Robocalls" are the #1 consumer complaint in America today. Americans were bombarded with 4.1 billion robocalls last month. That is 132.5 million robocalls per day, 5.5 million per hour and 1.5 thousand per second[1].

2. The people complaining about harassing robocalls is increasing at an alarming rate.

3. North Broward Hospital District d/b/a Broward Health ("NBHD") d/b/a Broward Health Coral Springs robocalled the Plaintiff over 150 times.

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

---

[1] YouMailRobocall Index, available at http://Robocallindex.com (April 2020)

5.      Plaintiff, Anthony Russo, alleges Defendant, robocalled him more than 150 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Protection Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

6.      Robocalls are very inexpensive to make.  As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.      The TCPA was enacted to prevent companies like NBHD from invading American citizens' privacy and prevent illegal robocalls.

8.      Congress enacted the TCPA to prevent real harm.  Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.      According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

10. This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protection his own personal rights. Violations of the law are clear, as in the remedy. *Krakauer v. Dish Network, L.L.C.,* No. 18-1518, 2019 WL 2292196 at *2 (4th Cir. May 30, 2019).

## JURISDICTION AND VENUE

11. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

12. Violations described in the Complaint occurred while Plaintiff was in Coral Springs, Florida.

## FACTUAL ALLEGATIONS

13. Plaintiff is a natural person and citizen of the State of Florida, residing in Coral Springs, Florida.

14. Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8)

15. Plaintiff is an "alleged debtor."

16. Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

17. Defendant is a Florida Not For Profit Corporation with its principal place of business in Ft. Lauderdale, Florida and conducts business in the State of Florida.

18. The FCCPA applies to Defendant.[2]

19. The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

20. Plaintiff is the regular user and carrier of the cellular telephone number (954) 573-5762.

21. Defendants also called Plaintiff on his home number, (954) 753-5650.

22. Plaintiff was the "called party" during each phone call subject to this lawsuit.

23. Defendant called Plaintiff at times on a consecutive daily basis and with several calls in one day.

24. Defendant was calling Plaintiff from the telephone number (954) 847-1400 and possibly from other numbers.

25. When Plaintiff would answer the phone, there was a pause and he would have to say "hello?, "hello?" before a live person started to speak.

26. Defendant intentionally made calls to both his cellular phone and his home phone in order to harass him, create alarm and annoy him.

27. Defendant called Plaintiff with such frequency as can reasonably be expected to harass and exhaust Plaintiff.[3]

28. Plaintiff asked the Defendant to stop calling him. Defendant ignored Plaintiff's request to stop the calls and continued to call Plaintiff's cellular phone and Plaintiff's home phone.

---

[2] Although the [Federal Act] does not apply to original creditors, the FCCPA has been interpreted to apply to original creditors as well as debt collection agencies.") (see *Kelliher v. Target Nat'l Bank*, 826 F.Supp.2d 1324, 1327 (M.D.Fla.2011)

[3] Defendant should have the call logs showing the exact number of calls and the recordings which should illustrate exactly what was said to the Defendant.

29. Defendant called Plaintiff excessively and repeatedly at times within the same hour of the day, with the intend of causing alarm, panic and to wear down Plaintiff's will.

30. As a representative example of the unreasonably quick succession of calls, Defendant called Plaintiff on May 31, 2019 at 10:24 a.m., 11:01 a.m. and 11:37 a.m.

31. Plaintiff complained to the FTC and to the Department of Agriculture regarding the harassing phone calls.

32. "Express consent" is narrowly construed by the Courts.

33. It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

34. Defendant was put on notice Plaintiff did not want the Defendant contacting him.

35. Plaintiff told Defendant that he suffers from severe medical conditions and that the calls were upsetting him and increasing his anxiety and stress, but Defendants continued the harassing calls anyway.

36. Plaintiff revoked any express consent Defendant believed it had for placement of telephone calls to Plaintiff's cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

37. Defendant attempted to collect a debt from the Plaintiff by this campaign of abusive telephone calls.

38. Defendant made at least one call to (954) 573-5762.

39. Defendant made at least one call to (954) 753-5650.

40. Defendant made at least one hundred fifty (150) calls to (954) 573-5762.

41. Defendant made at least one hundred fifty (150) calls to (954) 753-5650.

42. Each call the Defendant made to (954) 573-5762 in the last four years was made using an ATDS.

43. Each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

44. Despite several requests by Plaintiff for the phone calls to stop, Defendant continued to make calls to both his celllar phone and home phone.

45. Plaintiff never provided his home telephone number to Defendant.

46. Plaintiff wrote several letters to Defendant indicating he felt harassed by the calls and to stop calling.

47. Defendant ignored Plaintiff's requests for the calls to stop.

48. Defendant has recorded at least one conversation with the Plaintiff.

49. Defendant has recorded numerous conversations with the Plaintiff.

50. Defendant has made approximately one hundred fifty (150) calls to Plaintiff's cellular telephone number and home telephone in the last 4 years which dates will be established exactly once Defendant produces their telephone dialing system records.

51. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

52. By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

53. Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

54. Defendant's phone calls harmed Plaintiff by wasting his time.

55. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used."  In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

56. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

57. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

58. Defendant violated the TCPA and FCCPA with respect to the Plaintiff.

59. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

60. Plaintiff makes claims pursuant to the FCCPA, a statute which expressly provides for punitive damages.  §559.77(2), Fla. Stat. (2015).

61. Under the FCCPA § 559.77(2), "the court may award punitive damages and may provide such equitable relief as it deems necessary or proper".

## COUNT I
**(Violation of the TCPA)**

62. Plaintiff incorporates Paragraphs one (1) through sixty one (61).

63. Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after he revoked his consent to be called by them using an ATDS or pre-recorded voice.

64. Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be called by them using an ATDS or pre-recorded voice.

65. Defendant, NBHD, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

66. As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

67. Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, NBHD, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the FCCPA)**

68. Plaintiff incorporates Paragraphs one (1) through sixty one (61).

69. At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

70. Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family.

71. Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his family.

72. Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described by Florida Statute §559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

Respectfully submitted,

*Heather H. Jones, Esq.*
Heather H. Jones, Esq.
Florida Bar No. 0118974
William "Billy" Peerce Howard, Esq.
Florida Bar No. 0103330
The Consumer Protection Firm, PLLC
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500, ext. 205
Facsimile: (813) 435-2369
Heather@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
*Attorneys for Plaintiff*